**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: January 26, 2016.**



_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-52459-cag |
| | § | |
| STAN P. BATES, | § | CHAPTER 7 |
| DEBTOR. | § | |
| | § | |

### MEMORANDUM OPINION ON THE ORDER FOR RELIEF

Came on to be considered the above-captioned involuntary proceeding filed for Stan P. Bates by Petitioning Creditors: Jude Bond, Bond Multimedia, LLC, Kingdom Chevrolet, Inc., and John D. Sauder Auto Company (ECF No. 1) (the "Involuntary Petition"). The Court held a trial on the Involuntary Petition and took this matter under advisement. For the reasons stated herein, the Court finds that the Order for Relief should be entered on the Involuntary Petition (ECF No. 1).

1

## PROCEDURAL HISTORY

On August 27, 2015, FWLL, LLC filed a chapter 11 bankruptcy petition, with Stan Bates signing on behalf of the Debtor as CEO. *See* Case No. 15-52071 (ECF No. 1). FWLL, LLC's bankruptcy case was subsequently converted to a chapter 7 proceeding on November 4, 2015. *See* Case No. 15-52071 (ECF No. 65).

The Involuntary Petition (the "Petition") was filed on October 6, 2015, (ECF No. 1)[1] by Petitioning Creditors Jude Bond; Bond Multimedia, LLC; Kingdom Chevrolet, Inc.; and John D. Sauder Auto Company (the "Petitioning Creditors"). Following the filing of the Petition, Stan P. Bates (the "Putative Debtor") filed an answer controverting the Petition (ECF No. 11).

The Court began a hearing on November 18, 2015, on 2040 Babcock, Ltd.'s Motion to Appoint Interim Chapter 7 Trustee (the "Motion to Appoint Interim Trustee") (ECF No. 30). The Putative Debtor and 2040 Babcock, Ltd. reached an agreement on the Motion to Appoint Interim Trustee (ECF No. 65).

On December 3, 2015, the Court held a hearing on Petitioning Creditor John D. Sauder's First Amended Motion for Summary Judgment (ECF No. 48), Putative Debtor's Memorandum in Opposition to Motion for Summary Judgment and in Support of Putative Debtor's Motion to Dismiss/Summary Judgment (ECF No. 81), Putative Debtor's Motion to Dismiss and to Determine Standing of Petitioning Creditors, or in the Alternative, Motion for Partial Summary Judgment or to Abstain (ECF No. 49) and Petitioning Creditor's Response thereto (ECF No. 76). The Court, after argument of counsel, denied Putative Debtor's Motion to Dismiss (ECF No. 49) and in doing so, determined that the Petitioning Creditors established the numerosity and dollar requirements of 11 U.S.C. § 303(b)(1).[2]

---

[1] All references to ECF No., unless otherwise noted, are to Case No. 15-52459-cag.
[2] Unless otherwise noted herein, all statutory references are to 11 U.S.C., *et seq.*

Next, the Court considered Petitioning Creditor John D. Sauder's Motion for Summary Judgment, Putative Debtor's Response thereto, and argument of counsel. The Court found that while the requirements of § 303(b)(1) were established, an order for relief can only be entered if "the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount." § 303(h)(1).[3] The Court found that while there was argument on this point, the Petitioning Creditor did not offer sufficient summary judgment evidence that Putative Debtor was not paying debts as such debts became due. Additionally, the Court found that Putative Debtor did not provide sufficient summary judgment to controvert this point. As such, the Court denied summary judgment and set this matter for an evidentiary hearing on December 16, 2015. The hearing continued onto December 17, 2015, and January 5, 2016. The issues before this Court are (i) whether, under the meaning of § 303(h)(1), Putative Debtor is generally not paying debts as such debts become due and (ii) whether an order for relief should be entered.

## JURISDICTION

The Court has jurisdiction of the subject matter and of the parties to this proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(1).

## DISCUSSION

The burden is on Petitioning Creditors to establish that Putative Debtor was generally not paying his debts as they became due as of the date of filing of the involuntary petition. *In re Norris*, 183 B.R. 437, 455. (Bankr. W.D. La. 1995). The Court must consider the evidence

---

[3] Section 303(h)(2) provides that if a debtor is generally paying debts as such debts become due, the order for relief can nonetheless be entered, if "within 120 days before the date of the filing of the petition, a custodian, other than a trustee, receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession." This is not applicable to this matter.

bearing in mind that "the filing of an involuntary petition is an extreme remedy with serious consequences to the alleged debtor." ***In re Reid***, 773 F.2d 945, 946 (7th Cir. 1985).

### A. Putative Debtor was not paying his debts as such debts became due.

Section 303(h)'s "generally not paying" standard is not a balance-sheet insolvency test based on a comparison of assets and liability. ***In re Green Hills Dev. Co., LLC***, 445 B.R. 647, 657 (Bankr. S.D. Miss. 2011). The question is not whether a putative debtor can pay his debts, but rather, whether a putative debtor is paying his debts. ***Id***. To determine if a putative debtor is not generally paying his debts as they become due, this Court must consider: (1) the number of unpaid claims; (2) the amount of such claims; (3) the materiality of the non-payments; and (4) the debtor's overall conduct in his financial affairs. ***In re Moss,*** 249 B.R. 411, 422 (Bankr. N.D. Tex. 2000) (citations omitted). No one factor is more meritorious than another; what is most relevant depends on the facts of each case.[4] 8 *Colliers on Bankruptcy* ¶ 303.31[2] (Alan N. Resnick & Henry J. Sommers, eds., 15th ed. rev. 3/06).

### 1. The number of claims not subject to a bona fide dispute

The Bankruptcy Code does not define the term "bona fide dispute." *Colliers* at ¶ 303.11[1]. The Fifth Circuit employs an objective standard, meaning that the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt. ***Subway Equip. Leasing Corp. v. Sims (Matter of Sims)***, 994 F.2d 210, 221 (5th Cir. 1993). The bankruptcy court may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists. ***Id***. (quoting ***In re Rimell***, 946 F.2d 1363, 1365 (8th Cir. 1991)). The determination as to whether a dispute is bona fide will often depend . . . upon an assessment of witnesses' credibilities and other factual

---

[4] Petitioning creditors' counsel consistently argued that the final prong—overall conduct in financial affairs—should be afforded more weight than the other factors. The Court finds no authority to support this assertion.

4

considerations, and therefore, the bankruptcy court's determination in this regard is a factual finding. *Sims*, 994 F.2d at 221 (citing *Rimell*, 946 F.2d at 1365).

Section 330(h)(1) only considers whether the debtor is generally paying such debtor's debts as such debts become due as of the date of filing the petition. *In re Edwards*, 501 B.R. 666, 682 (Bankr. N.D. Tex. 2013). Therefore, the Court will only consider those claims as of October 6, 2015.

a.     **Petitioning Creditors' Judgments and the Bond Settlement**

The Fifth Circuit has also held that a final judgment that has not been stayed is not subject to a bona fide dispute for purposes of § 303(h)(1) because to hold otherwise would require the bankruptcy court to impermissibly review the state court judgment. *In re Norris,* 114 F.3d 1182, 1997 WL 256808, at *5 (5th Cir.1997). Petitioning Creditors provided each of their Certified Judgements against Putative Debtor, all of which became final judgments before October 6, 2015. Petitioning Creditors' Exhibits ("PC Exhibits") O-1a (Kingdom Chevrolet Judgment); O-2 (Jude Bond and Bond Multimedia Judgment)); and O-3 (John D. Sauder Auto Company Judgment) (the "Petitioning Creditors' Judgments").[5] While Putative Debtor offered several arguments as to why these judgments were in "bona fide dispute," the Court finds that the judgments are final and not stayed; therefore, under *Norris*, they are not subject to a bona fide dispute for the purposes of § 303(h)(1).[6]

As Putative Debtor acknowledged, at the time of filing, he has not paid the Kingdom Chevrolet Judgment or the John D. Sauder Auto Company Judgment. Putative Debtor urges that

---

[5] Petitioning Creditor's Exhibit List states that O-2 is John D. Sauder Auto Company Judgment and that O-2 is Jude Bond and Bond Multimedia Judgement; however, the Court copy is tabbed as the inverse. Each exhibit in question was admitted, and therefore, this confusion is inconsequential.
[6] Putative Debtor testified that he disputed that he had any personal liability for the debts; that he could be subject to a judgment in states where he was not physically present; and the amount of the Petitioning Creditor's Judgments. *See* Trial Transcript December 17, 2015, p. 28: 3–18.

5

the Jude Bond and Bond Multimedia Judgment should not be considered as the parties reached a settlement ("Bond Settlement"). PC Exhibit P. The Bond Settlement was entered into on October 26, 2015, thus after the October 6, 2015, filing of the involuntary case. Because the Court must consider claims as of the date of filing, the settlement of any claims after October 6, 2015 is irrelevant to this Court's analysis under § 303(h).

Therefore, the Court finds that the Kingdom Chevrolet Judgment, John D. Sauder Auto Company Judgment, and Jude Bond and Multimedia Judgment are all claims, not subject to a bona fide dispute. Putative Debtor was not paying the Petitioning Creditors' Judgments as of October 6, 2015.

**b.     The American Express Claim**

On November 5, 2015, American Express filed a proof of claim (Claim No. 2) in the Involuntary Proceeding. *See* Claims Register 2-1, Case No. 15-52459. Attached to American Express's proof of claim is a statement reflecting a balance of $47,547.89 as of July 13, 2013. *Id*. The petitioning creditor must establish a prima facie case that no bona fide dispute exists. ***Sims***, 994 F.2d at 221 (citing to ***Rimell***, 846 F.2d at 1365). The Court finds that the proof of claim establishes a prima facie case that no bona fide dispute exists as the debt contained therein.

Once a petitioning creditor establishes his prima facie case that no bona fide dispute exists, the burden shifts then to the putative debtor to present evidence demonstrating that a bona fide dispute does exist. *Id*. Here, Putative Debtor has not provided evidence to establish that this claim is subject to a bona fide dispute. Therefore, the Court finds that Putative Debtor is not paying his debt to American Express as it becomes due.

6

c.  **Putative Debtor's Monthly Payments**

Putative Debtor asserts that the Petitioning Creditors' Judgments and the American Express claim should be considered against the various monthly payments on which Putative Debtor is current. Putative Debtor argues that the twenty-two monthly payment obligations he makes should all be considered in the § 303(h) analysis. *See* Putative Debtor Exhibit ("PD Exhibit") 1 ("Monthly Payments Ledger").

Petitioning Creditors argue that many recurring monthly payments should not be considered in the context of § 303(h). Courts are divided over whether small, recurring creditors—like utility bills, insurance premiums, and the like—are relevant under § 303.[7] *Colliers* at ¶ 303.14[4]. Nonetheless, bankruptcy courts throughout this circuit do not consider small recurring creditors in determining the number of creditors. ***In re Smith***, 415 B.R. 222, 232 (Bankr. N.D. Tex. 2009) (citing to ***In re Moss***, 249 B.R. at 419 and ***Denham v. Shellman Grain Elevator, Inc.***, 444 F.2d 1376 (5th Cir.1971)). Therefore, the Court must exclude all small, recurring creditors. Additionally, any debt which was incurred after October 6, 2015, must be excluded. Further, any debt which Putative Debtor was not current on as of October 6 will be considered as a debt not being paid as it became due.

Petitioning Creditors argue that any debts which were incurred before October 6, 2015, but for which no payment was due until after October 6, 2015, should also be excluded. The Court disagrees with this argument. As of the date of the petition, such debts were current because no obligation to repay them had yet arisen. Therefore, these debts should be contemplated under § 303(h).

---

[7] *Colliers* refers specifically to § 303(b); however, the analysis is equally applicable to § 303(h). *See Colliers* at ¶ 303.31[2] (stating that he treatment of small and recurring debts raises an issue under section 303(h), just as it does under section 303(b)(2)).

The Court finds that the following debts must be excluded from Putative Debtor's Monthly Payments Ledger:

1. Propane Depot ($218.08) because this debt was incurred on October 7, 2015. PD Exhibit 2. The Proofs of Payment are for earlier months, April 2015 and June 2015. PD Exhibit 3. Additionally, this debt is a small, recurring debt.

2. Foremost County Insurance ($111.86) because this is a small, recurring debt. PD Exhibit 6.

3. Dish Network ($ 330.92) because it is a small, recurring debt. PD Exhibit 14.

4. CPS Energy ($ 932.09) because it is a small, recurring debt. PD Exhibit 22.

5. Blue Science ($193.77) because it is a small, recurring debt. PD Exhibit 26.

6. Billmatrix NMAC ($ 505.00) because it is a small, recurring debt. PD Exhibit 30.

7. Allied Reft ($ 748.61) because it is a small, recurring debt. PD Exhibit 32.

8. AT&T ($ 547.72) because it is a small, recurring debt. PD Exhibit 40.

Forest Park Med Ctr Hospital ($ 1,122.30) (the "Forest Park Bill") was not current as of October 6, 2015. PD Exhibit 11. Any payment made after October 6, 2015 does not change the characterization of the debt. Putative Debtor stated that the Forest Park Bill was disputed, essentially over what his insurer would cover. Trial Transcript December 17, 2015 p. 36–37.[8] The Court finds that the Forest Park Bill is prima facie evidence that the debt is not subject to a bona fide dispute. Without more evidence than Putative Debtor's limited admissible testimony on this point, the Court finds that the Forest Park Bill is not subject to a bona fide dispute. Thus, the Forest Park Bill will be considered as a debt not being paid as it became due.

Excluding those monthly payments that are small, recurring debts, that were not current as of October 6, 2015, or were not incurred as of October 6, 2015, the Court finds that Putative

---

[8] Petitioning Creditor's counsel objected to a portion of this testimony as hearsay, which was sustained by the Court. Therefore, the Court specifically excludes this testimony.

Debtor was generally paying on thirteen (13) debts as they became due and was not paying five (5) creditors whose debts were currently due.[9]

**2.      The amount of such claims.**

The Petitioning Creditors' claims aggregate to approximately $87,544[10] and the American Express claim is for $47,547.89. *See* Claims Register 2-1, Case No. 15-52459. The Forest Park Med Ctr. Hospital debt was $1,222.30 as of October 6, 2015. Thus, claims not being paid as they became due amount to $136,314.19. The thirteen debts that were being paid as they became due accumulate to $18,355.18, in monthly payments on $618,743.39 debt. Although it might appear that Putative Debtor is generally paying on more debt as it became due, much of the $618,743.39 is not currently due, as evidenced by the monthly payment obligations. As of October 6, 2015, the amount not being paid that was currently due was $136,314.19 and the amount being paid that was currently due was $18,355.18.

**3.      The materiality of the non-payments.**

Nonetheless, a pure mathematical test would not reveal whether a debtor was "generally" paying its debts as they become due. ***Norris*** 183 B.R. at 456. The failure to pay just one significant creditor can support a finding that the debtor is generally not paying its debts. ***In re Euro-Am. Lodging Corp.***, 357 B.R. 700, 713 (Bankr. S.D.N.Y. 2007). Here, Putative Debtor has elected to pay some debts, including debts incurred on new vehicles and jewelry, while neglecting to pay multiple final judgments rendered against him. Putative Debtor "has paid

---

[9] It is arguable that Putative Debtor was not paying six creditors as of the date of petition because Jude Bond and Bond Multimedia are separate legal entities who each held an enforceable right to payment against Putative Debtor. Whether Putative Debtor is not paying five creditors or six creditors is not a material issue to this Court's determination. Nonetheless, the Court finds that the plain language of § 303(h) indicates that Congress contemplated what debts were not being paid, rather than what creditors were not being paid. It appears from the face of the Jude Bond and Bond Multimedia Judgment that this judgment represents a single debt to multiple creditors.

[10] Kingdom Chevrolet Judgment ($31,873.02); Jude Bond and Bond Multimedia Judgement ($41,676); and John D. Sauder Auto Company ($13,995).

9

those creditors whose claims [he] wants to pay, rather than all of [his] outstanding debts." *In re Moss*, 249 B.R. at 423.

4. **The debtor's overall conduct in his financial affairs.**

The Court must evaluate Putative Debtor's conduct in his financial affairs; not his conduct as CEO of FWLL, LLC. Petitioning Creditors, and in rebuttal Putative Debtor, spent a great deal of time on the record and introduced evidence as to FWLL, LLC, and its business affairs.[11] The Court finds that any claims that FWLL, LLC mismanaged funds would be properly brought in FWLL, LLC's bankruptcy proceeding.[12] Putative Debtor's conduct as CEO of FWLL, LLC may become relevant in this chapter 7 bankruptcy proceeding; however, it is generally not part of this Court's considerations under § 303(h). What is a part of the Court's consideration under § 303(h) is Putative Debtor's conduct that relates solely to his personal financial affairs.

a. **Putative Debtor's credibility concerning financial affairs**

Nonetheless, the Court finds that the evidence concerning Putative Debtor's acts as CEO of FWLL, LLC bears on Putative Debtor's credibility concerning financial affairs. For instance, Putative Debtor testified to recognizing account ending in 8761 as one of FWLL, LLC business operating accounts.[13] PC Exhibit D ("FWLL Account 8761"). This Deposit Account Balance Summary indicates that FWLL Account 8761 had a current balance, as of May 30, 2014, of $18,798,896.68. *Id*. When asked if FWLL Account 8761's balance at any time in June or May

---

[11] The evidence includes the testimony of Denise Cantu on November 18, 2015 (hearing on 2040 Babcock, Ltd.'s Motion to Appoint Interim Chapter 7 Trustee); various records of FWLL; and parts of Putative Debtor's testimony on both December 16, 2015 and December 17, 2015. Petitioning Creditors provided an expert witness to prove Putative Debtor's allegedly fraudulent conduct regarding FWLL, LLC. The Court did not find this expert to be credible.

[12] Case No. 15-52071.

[13] Putative Debtor actually that he was unsure if this account was FWLL, LLC's primary business operating account, but nonetheless recognized it was one of FWLL's accounts. *See* Trial Transcript p.89: 18–25.

of 2015 had an account balance of more than $18,000,000.00, Putative Debtor asserted his Fifth Amendment right. Trial Transcript December 16, 2015 p. 89: 14–19 (the "Trial Transcript").

While a witness is free to properly invoke his Fifth Amendment rights in a civil proceeding; the Court can draw an adverse inference based on such invocations. *See* **Baxter v. Palmigiano**, 425 U.S. 308, 320 (1976) (stating that the "prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them"). The Court determines that here an adverse inference is well-supported and therefore finds that the FWLL Account 8761 did not have the more than $18,000,0000.00 balance in May or June of 2015. Similarly, Putative Debtor invoked his Fifth Amendment right when asked if he "instructed other people within the FWLL organization to modify the [FWLL Account 8761] statements." Trial Transcript p. 93: 6–10. The Court will draw an adverse inference finds that Putative Debtor participated in the manipulation of FWLL Account 8761.

Additionally, BT and G Capital Management LLC ("BT&G") opened a checking account with Putative Debtor's signature at Broadway National Bank ending in 9357. PC Exhibit HH. Petitioning Creditor's counsel asked Putative Debtor if on the day before FWLL, LLC's bankruptcy filing, he got a certified check from the FWLL, LLC's Frost Bank Account ending in 9687 in the amount of $104,000 payable to BT&G and then deposited that $104,000 check into BT&G Account 9357. Trial Transcript p. 117: 16–24. Putative Debtor again invoked his Fifth Amendment right. Trial Transcript p. 117: 21, 25–26.

It is appears from the evidence before the Court that $104,000 was deposited into BT&G Account No. 9357 on August 26, 2015. Then, on August 27, 2015, Putative Debtor transferred $100,000 out of BT&G Account No. 9357 into Taurus Specialty Services, LLC Broadway Bank

11

Account ending in 9360 ("Taurus Account 9360"). PC Exhibits HH2, HH3. When asked if the $100,000 transferred into Taurus Account 9360 was part of the $104,000 transferred from FWLL to BT&G, Putative Debtor again invoked his Fifth Amendment right. Trial Transcript p. 124: 3–8.

The Court finds that Putative Debtor was often evasive regarding financial transactions. In many instances where Petitioning Creditors provided probative evidence of financial misdeeds, Putative Debtor invoked his Fifth Amendment right. The Court finds that while Putative Debtor's acts as CEO of FWLL are not relevant to this Court's determination under § 303(h), his testimony as to those acts is indicative of his lack of honesty as to financial affairs.

**b.     The funneling of funds out of FWLL for Putative Debtor's benefit**

Petitioning Creditor's counsel examined Putative Debtor as to a $16,000.00 transfer from FWLL, LLC's Frost Bank Account Ending in 2435 ("FWLL Account 2435") to Bohica International Trading Company ("Bohica") on June 5, 2015. PC Exhibit G-1, Trial Transcript p.111–12. Specifically, Putative Debtor was asked if the transfer to Bohica was repaid directly to Putative Debtor. Trial Transcript p. 112: 11–14. Putative Debtor asserted his Fifth Amendment right. The Court finds that based on the admitted evidence—particularly the two $8,000.00 checks written from Bohica and endorsed by Putative Debtor in July 2015—it can draw an adverse inference from Putative Debtor's assertion of his Fifth Amendment right. Thus, the Court finds that the $16,000.00 transfer to Bohica was repaid directly to Putative Debtor.

Next, Petitioning Creditor's counsel questioned Putative Debtor as to an August 13, 2015, transfer of $67,362.50 out of FWLL Account 2435 to Bohica. Trial Transcript p. 115: 6–9. The following day, August 14, 2015, Bohica wired $65,362.50 to Putative Debtor's personal account. PC Exhibit GG-2. When asked if Putative Debtor agreed "that the day after FourWinds

sent the [$67,362], Bohica immediately wired [Putative Debtor] the next day an amount of $65,362.50," Putative Debtor again asserted his Fifth Amendment right. Trial Transcript p. 116: 10–13. After reviewing the evidence in the record and evaluating Putative Debtor's testimony and invocation of his Fifth Amendment right, the Court finds that Putative Debtor funneled money out of FWLL through Bohica, back to himself.

c. **The transfer of funds out of Putative Debtor's personal account after receiving notice of the Involuntary Proceeding**

On October 6, 2015, the date the Involuntary Petition was filed, Putative Debtor took a cash withdrawal of $614,254.00 from his personal Frost Account checking account ending in 5400 (Personal Frost Account). PC Exhibit CC. Putative Debtor asserted that the transfer was not made after he received service of the involuntary petition; however, given the timing of these transfers and the Court's evaluation of the credibility of Putative Debtor's Testimony, the Court finds that Putative Debtor moved the $614,254.00 out of his personal account after receiving notice of the Involuntary Petition.

The Court finds Putative Debtor's overall conduct in his financial affairs troubling. Putative Debtor funneled money out of FWLL through various entities for his own benefit and problematically moved large sums of money out his personal account. Thus, Putative Debtor's overall financial conduct mitigates in favor of finding that he is not generally paying his debts as they become due.

In sum, the Court finds that while Putative Debtor was making timely payments to those creditors he chose to pay as of the petition date, he did so while ignoring Petitioning Creditors' significant debt. There is evidence of financial misconduct, but moreover the record is replete with evidence of Putative Debtor's attempts to cover his tracks. When examined about these questionable acts, Putative Debtor continually asserted his Fifth Amendment right. Therefore,

after evaluating the evidence before the Court, credibility and testimony of witnesses at trial, and arguments of counsel, the Court finds that Putative Debtor is not generally paying his debts as they become due, within the meaning of § 303(h).

**B.      <u>An Order for Relief Should Be Entered.</u>**

Section 303(h)(1) does not mandate that a bankruptcy court "shall order relief" against a debtor who is not paying its debts. ***In re Forever Green Athletic Fields, Inc.***, 804 F.3d 328, 334 (3d Cir. 2015). Rather, even where the statutory criteria for commencing an involuntary suit are satisfied and where the putative debtor is not paying its debts as they become due, bad faith on the part of petitioning creditors provides a basis for dismissing an involuntary bankruptcy petition. *Id*. The Court finds that Petitioning Creditors have not acted in bad faith.[14]

## CONCLUSION

The Court has previously concluded that Petitioning Creditors have met the numerosity and dollar requirements of § 303(b)(1). For the reasons stated herein, the Court finds that Putative Debtor is generally not paying debts as such debts become due within the meaning of § 303(h)(1). Therefore, the Court will enter an order for relief in this matter.

# # #

---

[14] Putative Debtor has continually argued that based on the Bond Settlement, Petitioning Creditors' counsel had a duty to dismiss the involuntary petition. *See* PC Exhibit P. The Court finds that Petitioning Creditors' counsel was not a party to the Bond Settlement. Any allegation that a party to this contract has not performed under their agreement is a dispute between parties of that agreement and has no bearing on Petitioning Creditors' good faith.