

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: May 12, 2017.**

_Craig A. Gargotta_
_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 15-52459-CAG |
| | § | |
| STAN P. BATES | § | |
| | § | CHAPTER 7 |
| Debtor. | § | |
| | § | INVOLUNTARY |

### ORDER GRANTING AMENDED OBJECTION OF TRUSTEE TO PROOF OF CLAIM NO. 11 FILED BY THE OFFICE OF THE ATTORNEY GENERAL FOR POST-PETITION CHILD SUPPORT (ECF NO. 163)

Before the Court is Trustee's Amended Objection of Trustee to Proof of Claim No. 11 Filed by the Office of the Attorney General for Post-Petition Child Support (ECF No. 163[1]) (the "Objection"), the Attorney General's Response thereto (ECF No. 164), and the Joinder to Objection of Trustee to Proof of Claim No. 11 Filed by the Office of Attorney General for Post-Petition Child Support[2] (ECF No. 151). Also before the Court is a Joinder in Objection filed by

---

[1] Unless otherwise noted, all references to "ECF" herein refer to documents filed in Bankruptcy Case No. 15-52459-cag.
[2] The Chapter 7 Trustee in the related chapter 7 proceeding, *In re FWLL* (15-52071), filed this Joinder in Objection for which he both adopts and supports the Objection filed by the Chapter 7 Trustee in the instant case.

2040 Babcock, LTD., Kingdom Chevrolet, and John D. Sauder Auto Company (hereinafter "Creditors") (ECF No. 157). This Court conducted an evidentiary hearing on February 8, 2017, before taking the matter under advisement. The Court has reviewed the entire record before it, including all admitted exhibits. The Court has also carefully considered all evidentiary objections raised and sustained in making its findings of fact.

Trustee objected to Proof of Claim No. 11 filed by the Office of the Attorney General in the amount of $165,316.00 (the "Proof of Claim"). Trustee bases his Objection on 11 U.S.C. §§ 502(b)(5) and 507(a)(1)(A)[3] and files his Objection pursuant to Bankruptcy Rule 3007.

As an initial matter, the Court finds that it has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1334 (2012). This matter is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) (administration of the estate) and (B) (allowance or disallowance of claims), in which the Court may enter a final order. Venue is proper under 28 U.S.C. § 1408. This matter is referred to the Court pursuant to the District's Standing Order of Reference.

## PROCEDURAL AND FACTUAL BACKGROUND

Debtor, Stan P. Bates, was placed into an involuntary bankruptcy case on October 6, 2015, and an Order for Relief under chapter 7 was entered on January 26, 2016. Trustee was subsequently appointed on January 28, 2016. Claimant is the Office of the Attorney General (the "State").

On June 11, 2011, the 408th Judicial District Court of Bexar County, Texas entered a Final Decree of Divorce for Debtor and his wife, Naomi Bates (AG Ex. A[4]). The final decree dissolved the marriage and included a child support order which required Debtor to make periodic payments of $2,600 per month (AG Ex. A). On August 30, 2013, the State gave notice to all parties and the

---

[3] Unless otherwise indicated, all references are to 11 U.S.C. et seq.
[4] "AG" denotes the Texas Attorney General's Office exhibits.

2

district court that the child support obligation had been assigned to a governmental unit (AG Ex. B).  The manner of payment for Debtor's child support obligation was later modified on July 23, 2015, to a monthly payment of $1,710 (Creditors' Ex. B).  Finally, on April 26, 2016, the 408th Judicial District Court of Bexar County, Texas, entered a child support order that required a lump sum payment of Debtor's child and medical support obligations pursuant to Texas Family Code § 154.003 (the "Lump Sum Support Order") (Creditor's Ex. E).  The Lump Sum Support Order made the following finding:

> …It is also found that pursuant to the Texas Family Code § 154.003, it is in the best interest of the child that the ordered child support and medical support be paid by a lump sum payment for current and future child support and medical support from the date of this order up through the date of the cessation of child support under the law…

(Creditors' Ex. E).  Two days later, on April 28, 2016, the State filed Proof of Claim No. 11 in the amount of $165,316 as a domestic support obligation (the "DSO") under § 507(a)(1)(A) or § 507(a)(1)(B) (Trustee Ex. 2).  Trustee subsequently filed his Amended Objection to Claim of the Office of the Attorney General (ECF No. 163).  The State subsequently filed its Amended Response to the Trustee's objection (ECF No. 166).

## PARTIES' CONTENTIONS

There are two issues before the Court: (1) Does the state have an allowable claim, and (2) If the State does have an allowable claim, is the claim entitled to priority classification?  Trustee maintains that the claim is not allowed because it is made up entirely of unmatured debt obligations.  Trustee bases this assertion on statutory analysis of 11 U.S.C. § 502(b)(5) and the lack of case law regarding the issues presented by this Objection.  Specifically, Trustee argues that because there was no attached documentation on the Lump Sum Support Order showing what DSO

3

amounts were due as of the date of filing for bankruptcy, a plain reading of § 502(b)(5)[5] demonstrates that the claim should be disallowed because the Lump Sum Order did not include any documentation that Debtor was behind on his DSO obligation.  Further, there was no indication of whether or not the lump sums encompassed arrearages.

The State believes that the DSO is a mature, pre-petition debt and that the definition of DSO under the Bankruptcy Code demonstrates why the claim should be allowed.  The State's interpretation of the Code is a DSO is a debt that "is owed to *or recoverable by a spouse*." § 101(14A)(A)(i) (emphasis added).  Under Texas law, a state court may order child support to be paid by a parent "until the child is 18 years of age or until graduation from high school, whichever occurs later."  Tex. Fam. Code Ann. § 154.001(a)(1) (West 2017).  Here, the state court originally ordered monthly payments by Debtor for child support, payable to Mrs. Bates. The State's contention is that, when read together, the Texas Family Code and the Bankruptcy Code support the idea that the entire child support obligation is due and owing at the time the child support is ordered because the DSO is "recoverable by" Mrs. Bates.  § 101(14A)(A)(i) (2017).  Put differently, the moment the initial 2010 child support order was signed, Debtor owed the monthly payment of $2,600 multiplied by the number of months until his child either turned 18, joined the military, or married.  Tex. Fam. Code Ann. § 154.001(a)(1) (West 2017).

This line of thinking is referred to as "conduct theory" which "determines the date of a claim by the date of the conduct giving rise to the claim." ***In re Parker***, 313 F.3d 1267, 1269 (10th Cir. 2002). Thus, the State contends that when conduct theory is applied the entire child support payment should be considered due and owing at the time the support was ordered in 2010.  The State argues that the words "recoverable by," support the conclusion that the entire obligation was

---

[5] Pursuant to § 502(b)(5), a nondischargeable, unmatured support claim is a disallowed claim, as only matured claims are considered allowable claims.

4

owed pre-petition because child support was recoverable by Mrs. Bates as of 2010.

Further, the State argues this position is supported by case law. The State directs the Court's attention to the *Lightfoot* case, which addressed the question of whether a chapter 13 plan may allow "postpetition interest on child support debt without providing for full payment to all creditors." *In re Lightfoot*, No. 13-32970, 2015 WL 3956211, at *1 (Bankr. S.D. Tex. June 10, 2015). In *Lightfoot,* the debtor was in arrearages on his child support in the amount of $19,898.79 which debtor proposed to cure through a Motion to Modify Confirmed Plan that would also include 6% annual interest on the arrearages. *Id.* at *1. The Chapter 13 Trustee objected because the proposed plan sought to pay 6% in interest on the child support claim without paying 100% on general unsecured claims. *Id.* The *Lightfoot* court agreed that the definition of a DSO debt includes "interest that accrues on that debt as provided under applicable nonbankruptcy law." *Id.* (citing 11 U.S.C. § 101(14A)(A)(i) (2017)). The Court determined that "[t]he child support arrearage claim in the instant Debtors' case qualifies as 'a debt that accrue[d] before. . . the date of the order for relief' and is defined to include interest, here, 6% under the Texas Family Code § 157.265(a). Therefore, 'as of the date of the filing of the petition' the entire arrearage, with interest, was 'owed to or recoverable by' Debtor's ex-wife.'" *Id.* at *3. Thus, the State's assertion is that *Lightfoot* is directly on point because the DSO in the instant case accrued before the order for relief was entered.

The Chapter 7 Trustee believes that the plain language of § 502(b)(5) provides adequate explanation as to why the claim should be disallowed. The Trustee focuses on the language of § 502(b)(5) providing that, when an objection to a claim is filed, the court "shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount" when that claim is unmatured as of the date

of the petition and excepted from discharge pursuant § 502(b)(5). In the case at bar, the filed claim did not bifurcate between the amount of child support due as of the date of filing the bankruptcy petition and any post-petition child support amount that would arise in the future. As such, the amount of the claim could not be adequately determined. No other documentation was provided to aid in determining the amount of support due as of the date of filing the bankruptcy petition. Therefore, the Trustee believed Debtor to be current on his domestic support obligations.

The Trustee further argued that no chapter 7 bankruptcy cases currently address the issues presented within this Objection. According to the Trustee, the Bankruptcy Code is clear in its requirement that the DSO claim be an amount due as of the date of filing the bankruptcy petition, and therefore, no court has needed to address this issue.

<u>ANALYSIS</u>

The Court finds that: (1) The State's claim for post-petition child support is disallowed in its entirety; and (2) Because the claim is disallowed, the Court need not address whether the claim is entitled to priority status. As such, the Court finds that the claim filed by the State is disallowed based on the Fifth Circuit's rejection of conduct theory and the deficiency of the filed proof of claim. *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1277 (5th Cir.1994).

**1. Conduct Theory**

The Court finds that the conduct theory is not applicable under Texas law. "Conduct theory" is used by courts to "determine[] the date of a claim by the date of the conduct giving rise to the claim." *In re Parker*, 313 F.3d 1267, 1268-69 (10th Cir. 2002). The *Parker* court adopted this test because it is "in tune with the plain language and the policy underlying the Bankruptcy Code." *Id*. at 1269. Other courts have adopted this test because "the legislative history shows that Congress intended that all legal obligations of the debtor, no matter how remote or contingent, will

be able to be dealt with in bankruptcy." *Grady v. A.H. Robins Co.*, 839 F.2d 198, 202 (4th Cir. 1988). Both the Seventh Circuit and the Fourth Circuit have also adopted conduct theory. *Saint Catherine Hosp. of Indiana, LLC v. Indiana Family & Soc. Servs. Admin.*, 800 F.3d 312, 315 (7th Cir. 2015); and *Grady*, 839 F.2d at 203. The Fifth Circuit, however, has declined to follow conduct theory, opting instead to adopt the pre-petition relationship test. *Lemelle*, 18 F.3d at 1277. "Under this test, a claim arises from a debtor's pre-petition tortious conduct where there is also some pre-petition relationship between the debtor and the claimant, such as a purchase, use, operation of, or exposure to the debtor's product." *JELD–WEN, Inc. v. Van Brunt (In re Grossman's Inc.)*, 607 F.3d 114, 123 (3d Cir. 2010) (en banc). Indeed, one bankruptcy judge in the Fifth Circuit noted that "[t]he 'pre-petition relationship test' ameliorates the problem often attributed to the 'conduct test'-that a bankruptcy proceeding cannot identify and afford due process to claimants." Barbara J. Houser, *Chapter 11 as a Mass Tort Solution*, 31 Loy. L.A. L. Rev. 451, 465 (1998). In *Lemelle*, the Fifth Circuit considered the issue of whether a tort liability claim arose pre-petition. After discussing various tests for determining when a claim arises, the Fifth Circuit adopted the pre-petition relationship test by stating that "a claim arises at the time of the debtor's negligent conduct forming the basis for liability only if the claimant had some type of specific relationship with the debtor at that time." *Lemelle*, 18 F.3d at 1276. Applying this approach, the Fifth Circuit held that the claim could not be pre-petition because there was no "evidence of any pre-petition contact, privity, or other relationship" between the parties. *Id.* at 1277.

As evident by the cited authorities, this Court cannot apply conduct theory in this instance because the Fifth Circuit has rejected conduct theory, opting instead to apply the pre-petition relationship test to determine when a claim arises. While it is true that the *Lemelle* case focused

on an underlying tort claim, the Fifth Circuit has used the pre-petition relationship test to determine the timing of other underlying claims. In ***In re Egleston***, the Fifth Circuit used the pre-petition relationship test to determine that debtor's ex-wife had a pre-petition claim for debtor breaching his alimony payments before filing for bankruptcy. 448 F.3d 803, 812–14 (5th Cir. 2006). Thus, the Fifth Circuit has used the pre-petition relationship test for claims that are not tort related, and therefore, this Court should apply the pre-petition relationship test to the issue at bar, not conduct theory. The facts in ***Egleston***, however, are distinguishable from the case at bar and require a different outcome when applying the pre-petition relationship test. In ***Egleston***, the claims by debtor's ex-wife were created because debtor had breached his obligation to pay alimony prior to filing for bankruptcy.

In the current case, the State has provided no documentation to prove that there was any pre-petition breach of obligation warranting an acceleration of the child support obligation post-petition. Indeed, based on the information provided, the Trustee believed Debtor to be current on all support obligations when the order for relief was entered. If the State seeks to prove that Debtor did indeed have negligent conduct to force the occurrence of a claim within the meaning of the test, it has failed to provide the Court with any evidence. What the Court has is a barebones DSO order with no indication as to why a lump sum payment was ordered after Debtor went into bankruptcy. From an evidentiary standpoint, the Court can only conclude that the conduct giving rise to the Lump Sum Order occurred post-petition due to the fact that the Lump Sum Order was signed post-petition. The State attempts to retroactively make this lump sum a pre-petition debt, but has applied the wrong test by using conduct theory. Even when applying the correct test, it is apparent that this claim still cannot be a pre-petition debt, even considering the broad interpretation that a "claim" is afforded under the pre-petition relationship test.

8

2. *In re Lightfoot*

The ***Lightfoot*** case provided courts with a bright-line rule when it announced that "[t]he child support arrearage claim in the instant Debtors' case qualifies as 'a debt that accrue[d] before. . . the date of the order for relief' and is defined to include interest, here, 6% under the Texas Family Code § 157.265(a). ***Lightfoot***, 2015 WL 3956211, at *3   The State argues that this Court should apply the ***Lightfoot*** case to the facts at bar and hold that the State's claim is a mature, pre-petition debt.  Applying the ***Lightfoot*** case would, however, force the Court to ignore the fact that this case dealt simply with allowing post-petition interest to be considered as a pre-petition debt that must be included in the proposed plan. The ***Lightfoot*** court was tasked with deciding whether or not to interpret accrued interest as part of the child support arrearage claim.  These are not the facts before this Court.  This Court is tasked with deciding whether the entire Lump Sum Order of child support should be considered a mature, pre-petition debt.  ***Lightfoot*** dealt with allowance of accrued interest on child support arrearage, not the allowance of an award of a lump sum award of child support after the entrance of the order for relief.  To interpret ***Lightfoot*** broadly to allow post-petition order child support to be considered pre-petition would grossly distort the holding of the case which dealt solely with the issue of providing for post-petition interest within the plan.  Put simply, ***Lightfoot*** cannot be read and interpreted as broadly as the State proposes.

3. **Sufficiency of Proof of Claim**

Sections 501 and 502 of the Bankruptcy Code govern the substantive basis for allowance of a claim, and Federal Rule of Bankruptcy Procedure Rule 3001 governs the procedure by which the Court determines whether a filed proof of claim is allowed.  Under § 502(a), a filed proof of claim is "deemed allowed, unless a party in interest. . . objects."  Once an objection is made,

however, § 502(b) directs that "the court, after notice and a hearing, shall determine the amount of such claim. . . as of the date of the filing of the petition, and shall allow such claim. . . ."

During the claims allowance process, the burden of proof rests on different parties at different times. *In re Leverett*, 798–99 (Bankr. E.D. Tex. 2007) (citing *In re Woodmere Inv'rs. Ltd. P'ship*, 178 B.R. 346, 354–55 (Bankr. S.D.N.Y. 1995)). Once an objection to claim is made, the claimant satisfies the initial burden by complying with Bankruptcy Rule 3001, which requires a proof of claim substantially conform with Official Form 10. *See* Fed. R. Bankr. P. 3001(a). "Initially, the claimant must allege facts sufficient to support the claim." *Leverett*, 378 B.R. at 799. "In other words, a claim that alleges facts sufficient to support a legal liability to the claimant satisfies the claimant's initial obligation to go forward." *In re Allegheny Int'l., Inc.*, 954 F.2d 167, 172 (3d Cir. 1992). Bankruptcy Rule 3001(f) permits a proof of claim that is executed and filed in accordance with Rule 3001 and Official Form 10 to constitute "prima facie evidence of the validity and amount of the claim." *Id.* "Rule 3001(f) permits the proof of claim itself to act like a verified complaint and have an independent evidentiary effect in a hearing on an objection to the claim." *Leverett*, 378 B.R. at 799 (citing *In re Cluff*, 313 B.R. 323, 340–43 (Bankr. D. Utah 2004); *Garner v. Shier (In re Garner)*, 246 B.R. 617, 622 (9th Cir. B.A.P. 2000)).

Upon claimant's compliance, the burden of proof then shifts to the objecting party to produce "evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Leverett*, 378 B.R. at 799 (citing *Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1041 (9th Cir. 2000); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. B.A.P. 2000)). If the objecting party is able to rebut the claim in this way, the burden of proof then shifts to the party who would bear the burden respecting this claim outside of

bankruptcy. *Leverett*, 378 B.R. at 799 (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 26 (2000)). The Court is not convinced that the State has met their initial burden of proof because the State has not adequately alleged sufficient facts to prove a legal liability for the amount claimed in the proof of claim. Put simply, the State has failed to provide the Court with enough evidence to find that the amount claimed is a valid, mature pre-petition debt entitled to payment.

It is clear from the record and arguments by the parties at the hearing that the actual claim filed by the State is lacking in detail to adequately support the claimed amount of child support. Without evidence as to the validity of the amount claimed, the Court is unable and unwilling to determine that the State has met its initial burden. The only documentation attached to the filed claim was the Lump Sum Support Order, which ordered child support to be paid in a lump sum of $20,276 for medical support and $145,040 for child support (Creditors' Ex. E). No explanation was offered within the order for why the modification of child support was necessary and how the State arrived at that specific number, meaning that there was no indication of whether the amounts covered arrears or prospective, necessary support for the child. To the Trustee's point, the lump sums awarded in the modification order fails because there is no guidance as to how the state court arrived at those particular numbers, and it is, therefore, impossible to tell on the face of the claim, whether or not the amount claimed is a mature or unmature debt. If the state court modification had provided guidance as to whether the awarded amount encompassed arrearages and prospective payments, this would be a different analysis that the Court would need to address. This, however, is not the case. The State has failed to meet its evidentiary burden to provide enough initial facts to switch the burden of proof to the Trustee.

Evidence provided at trial was equally unavailing. Among other documentation, the State provided the Court with posted child support payments as well as an earlier child support

modification order. None of these documents are able to give the Court an accurate figure for the calculations for the debt. The Court, however, is constrained to the record and no adequate evidence was provided. As such, this offered evidence fails to get the State over the threshold needed to prove that this is a valid claim.

### CONCLUSION

For these reasons, it is ORDERED that Trustee's Amended Objection of Trustee to Proof of Claim No. 11 Filed by the Office of the Attorney General for Post-Petition Child Support (ECF No. 163) is GRANTED.

###